Civil action instituted in the Municipal Court of the City of High Point to recover for alleged wrongful death, G.S., 28-172, and G.S., 28-173, heard in Superior Court on plaintiff's appeal thereto from judgment as of nonsuit entered in the said Municipal Court.
The plaintiff alleges in his complaint these acts of negligence of defendant, acting through his servant and agent, Charles Byrd, in the course of his employment and the scope of his authority, proximately causing the death of his intestate, briefly stated: That defendant parked its truck (a) on the paved portion of English Street in the City of High Point, and left it standing there in the nighttime without lights; (b) in a dark place where it was partially obscured by a large tree with overhanging limbs and foliage, and (c) with the rear wheels extending more than twelve inches from the curb in violation of an ordinance of the City of High Point, section 8 of Article 5 of chapter G.
Defendant, answering, denies the allegations of negligence alleged in the complaint, and as further defense avers: (1) That at the time Charles Byrd was not engaged in any business of the defendant nor was he acting within the scope of his authority or in the course of his employment by defendant; (2) that the death of plaintiff's intestate was the proximate result of the negligence of the driver of the automobile in which he was riding at the time, in that he was operating same recklessly and in violation of provisions of G.S., 20-141, and not by any negligence of the said Byrd; (3) that section 11 of Article VI of chapter G of the Ordinances of the City of High Point relating to parking lights is specifically pleaded; and (4) that the driver of another vehicle approaching in the opposite direction failed to dim his lights in violation of provisions of G.S., 20-181, and the vision of the driver of the automobile in which plaintiff's intestate was riding was obscured and he failed to see defendant's truck as he ought to have done, in which event the negligence of the driver of the other vehicle or of the driver of the automobile in which *Page 12 
plaintiff's intestate was riding, or both, was the proximate cause of the death of plaintiff's intestate.
Upon the trial in the Municipal Court of the City of High Point these facts as of 7 July, 1945, appear to be uncontroverted: Defendant, a resident of Mecklenburg County, North Carolina, is engaged in the transportation of freight by motor vehicles over the highways of this and other states, and as such owns and operates among other large tractor-trailers, a 1942 White tractor and trailer. Defendant's driver, Charles Byrd, had been driving defendant's truck from Charlotte, North Carolina, to Richmond, Virginia. And the truck was parked on the north or west side of English Street, in the City of High Point, North Carolina, headed in the direction of Thomasville, and allowed to stand as so parked from about six or seven o'clock in the evening until ten o'clock at night, when an automobile in which plaintiff's intestate was riding as passenger collided with same, causing the death of said intestate.
And upon the said trial in addition to the uncontroverted facts hereinabove stated, plaintiff offered in evidence an ordinance of the City of High Point, chapter G, Article 5, section 8 of the 1945 Code of Ordinances of the City of High Point, which reads as follows: "Parking parallel to curb — Where not otherwise indicated by this chapter all vehicles shall park parallel to the curb and not more than twelve inches therefrom."
Plaintiff then offered evidence tending to show this factual setting at the scene, and at the time of the collision on English Street, at No. 1114 where Charles Byrd lives, between Pope Street on the east and Kennedy Street on the west, a residential district:
English Street is a public highway, and is Route numbers 10, 29 and 70, and is very heavily traveled. It runs about northeast to southwest. It is paved, and is about forty feet wide from curb to curb, with a line marked in the center. The curbs are flush with the sidewalks. The truck of defendant was parked on its right side of the street in front of the house where Charles Byrd lives. "The street is practically straight at the point," as expressed by one witness, but "curves at the left in front of the truck and . . . to the right in the rear of the truck," and as expressed by another, "right at the point English is straight, down below and up above is a curve. It is a pretty good little distance." The grade is down hill toward Thomasville. The nearest street lights to the truck, in the opinion of one witness, where ninety steps of about three feet to the step, in front, — and one hundred and forty-two steps back of it. Another witness placed light at Kennedy Street, 200 feet away, and one up around that curve at Pope Street. Next to the Byrd house on the east is the King house, and on the west, in order named, are the Varner house and No. 1118, the W.L. Wright house. Across and at an angle *Page 13 
down English Street from the point of the accident, there is No. 1119, where B. E. Nobles lives. A car was parked in front of this, the Nobles house. "The trailer is about 28 or 30 feet long and . . . about 8 feet wide at the rear end."
In the light of the above setting, which evidence for plaintiff tends to show, plaintiff introduced certain witnesses, who testified in pertinent part as follows:
Witness Walter R. Lovings (driver of the car in which intestate was riding at the time of his injury and death), testified, on direct examination: "We drove slow through town and started home. We were going by way of English Street to West End to Reading Street where we lived. . . . We ran into Miller's tractor-trailer . . . I hit the left rear of the trailer . . . The right front wheel of my car struck the left tire of the trailer. The top part of the body of my car at the right side of the windshield came in contact with the trailer. The trailer had no lights on it. It was close to 10:00 at night. It was dark. I had my lights burning. There was other traffic on English Street in front of me about the time of the collision. A car was coming around the curve trying to straddle the middle line. About the time I dimmed my lights I hit the truck. The lights on the car that was meeting me were bright. I was traveling about two or three feet on the right of the center line of the street. This tractor-trailer was parked sitting in an angle to the curb . . . of about 8 or 10 feet. It was not parked parallel to the curb. The rear right-hand wheels of the trailer were more than a foot away from the curb. If the tractor and trailer had been parked against the curb or within a foot of the curb I would not have hit it. The street was dark where the trailer was parked. There were trees on the right-hand side of the street where this truck was parked. The limbs hung down low to the road and covered the back end of the truck . . . I was going in the same direction the truck was headed. Just as I saw the truck, I hit it. The car that was meeting me passed me at the same time I had the collision . . . I was traveling 20 to 25 miles an hour at the time of the accident. As I met the car that was traveling in the opposite direction I dimmed my lights. When the lights are dimmed they are down low to the ground. The truck I collided with had no lights either in front or rear." Then on cross-examination, he further testified: "I had brakes on my car. I could have stopped if I had seen the truck in time . . . By the time I saw the truck I hit it. Tree limbs hanging down shaded it. They covered the truck from my vision as I was going west on English Street. The limbs did not hang to the ground and I don't know exactly how far out in the street these trees project. I know they covered the truck . . . I saw the other car coming from toward Thomasville . . . He had bright lights on his car. The bright lights blinded me was one reason I didn't see the truck. I started to pull over. By the time I saw the *Page 14 
truck I hit it. I don't think I would have seen the truck if the fellow with the bright lights had not been coming. I don't know. It all happened so quick and sudden . . . All I know is that I was going down the street and the man coming toward me had bright lights and they blinded me and I didn't see the truck and ran into it. . . . The truck was not moving when I struck it. I hit the truck pretty hard. I demolished my car . . . The front end of it was jammed up under the cab part. The right door was knocked off . . . and `it squished the car back on Hammett and killed him' . . . If you stand out in Pope Street you can see down there . . . I saw the truck after I struck it. I just noticed the back of it . . . it was sitting at an angle to the curb . . . I am not positive that the rear end of the tractor-trailer was 8 or 10 feet out in the street from the curb. I don't know about measuring. That's my opinion. The rear tire of that truck was out in the street 8 or 10 feet, something like that. At least 8 feet. The man approached me from around the curve and didn't dim his lights. I dimmed mine . . . When his lights hit me he was about as far away as the middle of the room back there. His lights kept shining in my eyes until he got opposite me. I saw the truck just as I hit it. I hadn't seen it before I hit it."
Witness W.L. Wright, living at 1118 English Street, testified: "I was the first man at the car after the accident. . . . The tractor-trailer moved forward 6 or 8 feet and the front wheels ran up on the sidewalk. After the accident the rear of the trailer was possibly three feet away from the curb . . . Just before the accident I saw a car coming from the direction of Thomasville meeting the Lovings boy. It had very bright lights . . . English Street starts to curve right there in front of my house, — that is, west towards Thomasville from where the collision occurred. I couldn't tell how far the street is straight going towards the center of town. I should say that anybody standing in English Street at Pope Street can see a truck parked at 1114 English. The street has a small grade. The grade starts about Byrd's home. It is a gradual slant . . . I noticed the bright lights of the car going toward the center of town just before the collision. I guess that is what caused the boy to hit the truck, because the car blinded him. I know there is a big maple in front of King's, the next house to Charles Byrd, that does overhang the street — just a little bit."
Witness B. E. Nobles, on direct examination, testified: "I live at about thirty minutes after the collision. I looked at it and looked around. The back wheels were some distance from the curb . . . It was at least a foot or maybe more. This was the rear wheel on the trailer . . . The right front wheel of the tractor was on the sidewalk . . . The Chevrolet was demolished."
Witness W. F. Hunt testified: "I noticed and examined the truck 1119 English Street . . . I was sitting on my front porch when the *Page 15 
collision took place. I had seen the truck parked in front of the Byrd place before the accident . . . I saw a car coming in the direction from Thomasville immediately before the accident. It had unusually bright lights. There was a car parked in front of where I live and this car pulled over a little further. I saw the other car that Hammett was coming in from the other way and about the time they met, or possibly a little afterwards, the collision happened. The car Hammett was riding in dimmed its lights. The Lovings car was being driven with normal speed, around 20 to 25 miles . . . There was a tree standing in Mr. King's yard . . . The limbs were standing out in front of the street some . . . The car meeting Lovings was coming around the curve from towards West End by my house . . ." Then, on cross-examination, "There were many automobiles traveling on English Street at this point . . . They were passing there all the time . . . There would have been room for people traveling west on English Street to get around this truck with safety if a man hadn't been coming from the other way with bright lights on his car; the man coming from the other way with bright lights, coming around a curve, when he saw this car parked in front of my house, naturally he pulled over further and that is how he came to be driving where he was. He pulled out on account of passing the car that was in front of my house. He was going toward High Point with bright lights. There is a center line in English Street. It is a good broad place. An 8-foot truck parked against the curb would leave 12 feet clear to the center line . . ."
And witness C. W. Thomas testified: "I heard the impact . . . I went up there to the truck . . . When I got there no lights were burning on the tractor-trailer. The tractor-trailer was parked in an angle to the curb. The rear wheels were out 3 feet or more and the right front wheels were up on the sidewalk. There is a tree up above the truck and one in front of it. You could walk under the limbs of the tree back of the truck. It was a kind of foggy, cloudy night. It rained later on in the night . . . I live about 300 feet from the scene of this collision. I was in the vicinity before the collision. I crossed English Street in front of the truck at Kennedy Street . . . I saw this truck parked there. I didn't have any difficulty in seeing the truck. I went home and I heard the impact. Pretty bad crash from the way it sounded . . . I saw the Chevrolet. It was near about demolished."
Defendant, reserving exception to refusal of his motion for judgment as in case of nonsuit entered at close of plaintiff's evidence, offered in evidence: An ordinance of the City of High Point, chapter G, Article 6 — section 11, which reads as follows: "Lights on parked vehicles. Parking lights upon a vehicle, when such is lawfully parked at night on a street in accordance with this chapter, shall not be required, except where specifically demanded by the city." *Page 16 
Defendant then offered testimony as follows: W. C. Pemberton, a police officer of the City of High Point, testified in pertinent part: "I was called to investigate the collision . . . When I got there there were lights on the tractor-trailer. It was parked horizontal to the curb. The rear wheels of the trailer were within four inches of the curb. The front wheels were flush with the curb and the front wheels of the tractor were up over the curb on the sidewalk." Then, continuing on cross-examination: "I arrived at the scene of the collision about 10:13 p.m. I measured the width . . . and the length of the truck and the width of the street. The truck was 42 or 43 feet long and . . . about 8 feet wide. The tractor-trailer appeared to have moved forward and rolled up on the sidewalk . . . where the accident occurred they parked parallel to the curb."
C. C. Tilley, a civil engineer, testified: "I made the plat and the measurements on it . . . on July 15th. Just east of 1114 English the street is straight for a distance of 330 feet. From that point east it is on a slight curve. The curvature of English Street at Pope Street and beyond is not sufficient to interfere with the vision of a person approaching 1114 English Street for a distance of 650 feet. I made a test 612 feet east of 1114 English Street . . . There is a street light at the intersection of English and Pope Streets. Pope Street is 420 feet from 1114 English. There is a street light at the intersection of Kennedy and English. That is 203 feet from 1114 English. On English Street a curve starts practically half way between 1114 English Street and Kennedy. From the west in the daytime a car parked in front of 1114 English could be seen for 400 feet away . . . A car approaching 1114 English from the west and reaching a point opposite Kennedy Street, its lights would be shining approximately in front of 1114 English Street. When he reached a point 100 feet from 1114, the lights would be shining straight up, right-hand side . . ."
J. F. Perkins, Director of Public Utilities of the City of High Point, testified: "I am familiar with the street lights in the vicinity of 1114 English Street July 7, 1945. The street lights in that vicinity were located one at Pope and the other at Kennedy . . . These lights have 400 candlepower. It is a good bright light. A person approaching 1114 English from the direction of town could see a man in front of 1114 English Street 200 feet away . . . I checked it."
R. I. Barr, State Highway patrolman, testified: ". . . I came along right after it occurred . . . The city police were there . . . the front wheel of the tractor was on the curb and the rest of the wheels were down in the street. The right rear wheel of the trailer was about six inches or the width of your hand from the curb."
Motion of defendant for judgment as in case of nonsuit at the close of all the evidence was allowed, and judgment in accordance therewith *Page 17 
was signed. Plaintiff appealed to Superior Court, assigning as error, among others, the ruling of the court in granting the motion for nonsuit.
Upon hearing in Superior Court, the exception of plaintiff to the judgment of nonsuit was sustained, and the judgment reversed, and the cause remanded to the Municipal Court of the City of High Point. From judgment signed in accordance therewith, defendant appeals to Supreme Court and assigns error.
The challenge of defendant to the judgment entered in Superior Court raises for decision the question as to whether the evidence offered on the trial in the Municipal Court of the City of High Point, taken in the light most favorable to plaintiff, as we must do in considering judgments as in case of nonsuit, is sufficient to make out a case of actionable negligence on the part of the defendant and to require the submission to the jury of an issue with respect thereto.
In order to establish actionable negligence, "The plaintiff must show; First, that there has been a failure to exercise proper care in the performance of some legal duty which the defendant owed to plaintiff, under the circumstances in which they were placed; and, second, that such negligent breach of duty was the proximate cause of the injury — a cause that produced the result in continuous sequence and without which it would not have occurred, and one from which any man of ordinary prudence could have foreseen that such result was probable under all the facts as they existed." Whitt v. Rand, 187 N.C. 805, 123 S.E. 84.
Applying this principle to the evidence in the present case in the light of the allegations of negligence set out in the complaint, we are of opinion and hold that the evidence fails to show a breach of legal duty on the part of the defendant within the purview of the allegations of the complaint.
As to the allegation that defendant was negligent in parking and leaving standing its truck on the paved portion of English Street in the City of High Point in the nighttime without lights: It is noted that the State-wide statute, G.S., 20-161, providing that "no person shall park or leave standing any vehicle upon the paved portion of any highway," expressly directs its provisions to such portions of highways as are "outside of a business or residential district" as defined by statute. Hence, the parking or leaving standing of any vehicle in a business or residential district is not a violation of the State statute. And the evidence in the present case shows that English Street is a residential district. Moreover, there is no State-wide statute in this State that requires lights *Page 18 
to be displayed on vehicles parked in business or residential districts. Also, it is seen from the provisions of section 11 of the ordinances of the City of High Point, pertaining to lights at night on parked vehicles, introduced in evidence, that parking lights upon a vehicle, lawfully parked on a street in conformity with chapter G of the ordinances of the City of High Point, are not required, except as specifically demanded by the city. In the present case there is no evidence that the city demands that vehicles parked at night on English Street be lighted.
Furthermore, with respect to the allegation that defendant parked its truck with the rear wheels standing more than 12 inches from the curb, in violation of section 8 of Article 5 of chapter G of the ordinances of the City of High Point: Is there evidence that the truck of defendant was parked in violation of this ordinance? We do not think there is. The only evidence as to how the truck was parked with respect to the curb, before the collision in question, comes from the driver of the automobile in which plaintiff's intestate was riding. And he testifies, "I saw the truck just as I hit it. I hadn't seen it before I hit it." Moreover, an analysis of his testimony in regard to the position in which the truck of defendant was parked in relation to the curb, shows that he speaks of the position after the collision. And all the evidence tends to show that the force of the impact when the truck was hit by the automobile in which plaintiff's intestate was riding, moved the truck, and forced it over the curb and upon the sidewalk. In this connection it is also noted that the evidence tends to show that the rear end of the trailer was about eight feet wide, — and the driver of the automobile gives as his opinion that "the rear tire of the truck was out in the street at least 8 feet."
And it is not negligence on the part of a municipality to have shade trees along its streets. Ferguson v. Asheville, 213 N.C. 569,197 S.E. 146, citing Rollins v. Winston-Salem, 176 N.C. 411,97 S.E. 211. Hence, no duty in respect thereto rested upon defendant in parking the truck upon such street.
While the case presents a deplorable, tragic and untimely ending of a young life, the evidence is insufficient to support a finding that it was proximately caused by the parking of the truck of defendant. Other causes are apparent.
The judgment of Superior Court is
Reversed. *Page 19