MITTIE L. CLARK, ADMINISTRATRIX OF SAMUEL FRANKLIN CLARK, v. STANFORD LOWELL LAMBRETH.

(Filed 21 May, 1952.)

**1. Negligence § 19d—**

When it clearly appears from the evidence that the injury complained of was independently and proximately produced by the wrongful act, neglect, or default of an outside agency or responsible third person, defendant's motion to nonsuit is properly allowed.

**2. Automobiles §§ 8d, 18d, 21—Evidence held to establish that negligence of driver in hitting parked vehicle was sole proximate cause of collision.**

Intestate was riding as a passenger in his father's truck at night. The evidence tended to show that defendant's truck was parked at an angle to the curb so that its left rear protruded into the lane of travel, and that the truck driven by intestate's father collided therewith. The evidence further tended to show that no other traffic was moving along the street, that there

was abundant space for a vehicle to pass the parked truck in safety, and that the parked truck could be seen from some distance but that intestate's father did not see it.   *Held:* The evidence discloses either that the truck in which intestate was riding was driven without sufficient lights or that the driver failed to keep a proper lookout and that in either event the driver was guilty of negligence constituting the active proximate cause of the injury which insulated any negligence on the part of defendant, even if it be conceded that defendant's truck was negligently parked in violation of State law and city ordinance.

APPEAL by plaintiff from *Sink, J.,* at November Term, 1951, of IREDELL.

Civil action to recover for alleged wrongful death, G.S. 28-172 and G.S. 28-173, as result of actionable negligence of defendant Lambreth.

Plaintiff alleges in her complaint that the injury to, and death of her intestate was proximately caused by these acts of negligence:

1. That defendant Lambreth negligently and unlawfully parked his 1950 Ford truck with the rear end of it "sticking and protruding out over and into Shelton Avenue directly in front of automobiles passing over and along said . . . avenue . . . and allowed same to remain so placed up and until the time of the collision . . . in violation of" ordinances of the city of Statesville, Code of 1947, Numbers 71 and 61, respectively.

2. That defendant Lambreth negligently and unlawfully allowed his 1950 Ford truck to remain so parked, as above set forth, "without having lights or reflectors" on same "to warn persons traveling over and along said Shelton Avenue, in violation of the laws of the city of Statesville, North Carolina, and the State of North Carolina as set out and provided in the General Statutes of said State."

3. That "defendant negligently, carelessly and recklessly allowed dirt and dust to collect and form on all parts of his said Ford truck, making it even more difficult to be seen by persons traveling over and along the said Shelton Avenue."

Defendant Lambreth, in his answer, denies the material allegations of the complaint, and as first further answer and defense avers, among other things, substantially these facts: That his truck was parked in a business district in full compliance with ordinances of the city and of laws of the State; and that the collision between his truck and the Clark truck was caused solely by the negligence of O. B. Clark in that he operated his truck at unlawful speed, recklessly, without keeping a proper lookout, and without sufficient lights, and at a speed greater than that at which he could stop within the range of his lights.

And, for a second and further answer and defense, defendant Lambreth avers that, if he were guilty of negligence in any respect, then the negligence of O. B. Clark, as set out in paragraph 2 of the first further answer

and defense, joined and concurred with his negligence, in manner specifically set forth.

And defendant Lambreth prayed an order making O. B. Clark a party defendant herein and summoned to answer, etc., and that judgment be rendered in accordance with answer and defense set up by him, the said Lambreth.

Accordingly O. B. Clark was made party defendant, and served with summons and copy of answer. And, answering, O. B. Clark admits that he is the father of plaintiff's intestate and that plaintiff was riding in the motor truck of O. B. Clark about 10:30 p.m. on 23 December, 1950, on Shelton Avenue in Statesville, North Carolina, but denies all other averments set forth in both the first and the second further answer and defense of defendant—upon which he prays that defendant take nothing of him, and that the cross-action be dismissed at cost to defendant.

These facts appear to be uncontroverted: Plaintiff's intestate, Samuel Franklin Clark, a boy eleven years of age and resident of Iredell County, North Carolina, died in the early morning of 24 December, 1950, as result of injuries received at or about 10 o'clock p.m. on 23 December, 1950, when an International pick-up truck, owned and operated by his father, traveling in a southerly direction along Shelton Avenue in the city of Statesville, North Carolina, and in which he was riding as a passenger and guest, collided with the left rear end of a 1950 Ford truck owned by defendant Lambreth and parked and placed by him and permitted by him to remain parked on the west side of said avenue headed in southerly direction, at a point on Shelton Avenue in the second block from, and south of the intersection of said avenue and Monroe Street,— and plaintiff Mittie L. Clark is the duly qualified administratrix of the said Samuel Franklin Clark, deceased, and summons herein issued 17 February, 1951, and was served on defendant same day.

Upon the trial in Superior Court plaintiff offered as witnesses Mrs. Mittie L. Clark, mother and administratrix of Samuel Franklin Clark, deceased, A. E. Guy, City Clerk and Treasurer of the city of Statesville, and M. W. Raymer, coroner of Iredell County, and Sgt. Tom Waugh, member of police department of Statesville, who investigated the collision, and one W. D. Everhardt of Mooresville, N. C., a passerby.

At the outset of her testimony Mrs. Clark stated: That on night of 23 December, 1950, she, her husband Oscar Bruce Clark, and her son, the intestate, came from their home near Barium Springs into Statesville and had supper at the Donut Dinette. And, quoting her, "After we had supper we decided to go home. It was about 10 minutes to 10 o'clock . . . We drove to the stop light at the bus station, turned left and were on our way . . . My husband was operating our car. I was sitting in the center and my little boy was on the outside. We stopped at the red

light at the top of the hill which is at the intersection of Shelton Avenue and Monroe Street. I think this stop light is about 100 feet from the point of the collision in which we were involved."

The testimony offered by plaintiff tends to show this factual setting at the scene, and at the time, and on the night of the collision:

(1) There are curbs on both sides of Shelton Avenue, and width inside curbs is 35 feet and 8 inches. It is a three-lane highway, with ample space for three cars. The width of the left lane, and of the right lane, is 12 feet and 9 inches, and that of the center lane is 9 feet and 10 inches. The three lanes are marked with white lines,—the two lines being approximately 5 inches wide.

(2) The Avenue, looking south from its intersection with Monroe Street is straight, in opinion of plaintiff, for a mile, and in opinion of police officer for approximately 1½ blocks north and 2½ blocks south of the place of the collision.

There is a station at the corner at the stop light and Drum's Store is at the next corner in the first block. In the next block on the west side there is the Barkley home, in front of which defendant's truck was parked, and south of it a small fruit stand and next to it a filling station. Still further south on the left side there is an ice plant.

It was a clear and rather chilly night. It was not raining, and the street was dry.

According to Mrs. Clark's testimony: There was no traffic meeting the Clark truck. There were several cars parked on the west side of Shelton Avenue, but how many she does not know. She "did not notice that any cars were parked on the opposite side of the street from where the truck was parked." The lights on the Clark truck "were good, and were on dim." Mrs. Clark said: "I could see ahead with those dim lights about 50 feet." She also testified: "There was nothing between us and the parked truck as we approached it, no obstruction, nothing to prevent me from seeing it. There was nothing between our vehicle and the parked truck from the time we passed Monroe Street up until we reached the point where the accident happened."

And Mrs. Clark also testified: "After we stopped at the stop light, we came on across and the street was dark, and I remember seeing this truck which was parked just before we hit it. I saw the corner of it and it was projecting out over that white line and I thought it was going to hit me in the face so I went over against my husband and little boy. As to this line of which I speak . . . we were driving in the center lane. We were traveling about 15 or 20 miles an hour . . . cars were parked on that side of the street and we were missing them about 4 or 5 feet. As to the manner in which the truck that we hit was parked, the left corner of the truck was hanging out or projecting out over the white line and it was sitting

at an angle. There were no reflectors and no lights or anything on the vehicle we ran into. My son . . . was injured in this collision . . . I told Mr. Marvin Raymer about how the truck was parked . . ."

On cross-examination Mrs. Clark was asked these questions, which she answered as shown: "Q. And about how far up the street were you when you saw the truck? A. We were right on it. Q. How far away would you say? A. Well, I just saw it, and we hit it. He did not have any time to make any move so he would miss it. Q. Would you say three, or four, or five feet? A. Yes, approximately." And, again, "I was looking straight ahead, but did not see this truck until we were 4 or 5 feet from it."

And immediately after the collision, Mr. Clark asked Mrs. Clark "what did we hit?" The coroner and the officer each testify that he talked with Mr. Clark after the accident, and "he said he did not see the truck before he hit it."

And further as to position of defendant's truck: Sgt. Waugh testified that defendant told him "he had parked his truck there about thirty minutes before the collision . . . and that he parked it parallel to the curb."

In this connection, Sgt. Waugh also testified: "I went to the scene of the accident. The Lambreth truck, a 1950 Ford, was on the right hand side of Shelton Avenue, facing south, and the Clark truck was in the middle of the street. The bed of the truck was not on the chassis at that time. We moved the vehicles off the street . . . The right front wheel of the Lambreth truck was on the sidewalk, and the left front wheel was on the street next to the curb. The left rear wheel was sitting out in the street. The right rear wheel . . . two dual wheels, were approximately one and one-half feet from the curb, sitting at an angle to the west curb. The Clark truck . . . facing the same way . . . south, and about ten feet from the rear of the Lambreth truck."

This witness continued, "I measured the Lambreth truck. The overall length . . . is twenty feet and ten inches. The length of the bed is twelve feet, and its width is seven feet and ten inches. The height of the bed is six feet and six and one-half inches. The distance from the bed to the ground is three feet and four inches, and the distance from the top of the wheel to the bed is four and one-half inches."

As to the lights on the street: The tenor of Mrs. Clark's testimony is that there were not any street lights burning between the stop light and the ice plant, except one at the corner of the street below, and about 50 feet from where the accident happened.

On the other hand, the policeman testified that there was a light shining in the center of Shelton Avenue and Mills Street, and another in the southwest corner of Shelton Avenue and Winston Street—one hanging in the middle of the street, and the other on the corner. And that from the light on Winston Street to the scene of the accident was approximately

125 to 130 feet, and from that in Mills Street, it was approximately 200 feet. And the coroner testified that there was a street light east of the ice plant.

Evidence as to damage to trucks: The truck of defendant had a hole near the bottom of the bed on the left hand side, facing south, approximately a foot to eighteen inches from the left edge of the truck. The bed of the Clark truck was off the chassis. The right front was damaged, fender and hood. The right windshild post was broken. The center post was not broken. The right hand door was mashed in.

The policeman also testified that from the intersection of Shelton Avenue and Monroe Street, about a block and a half away, he could see the cars at the scene of the accident. On the other hand, while the coroner testified that looking south "there is a blind spot in there that is more or less a blank wall," he stated, "the area is not a black-out . . . as long as you were driving so you could stop as far as you could see, there was no danger."

Mrs. Clark testified: "If my husband had seen the truck he could have pulled to his left."

There is other testimony. It is not in conflict with the trend as indicated by the above.

Plaintiff also offered in evidence:

(1) Section 71 of Chapter 17 of the Code for the city of Statesville, "Parking automobiles, etc.," as follows: "Vehicles with trailers or any vehicle the combined length of load and vehicle is of such dimensions as to extend into the traffic lane shall not be parked within the forty-five degree spaces indicated at the curb at any place in the city so as to obstruct traffic, but when necessary for such vehicles to park, such vehicles shall park parallel to the curb and not more than six inches therefrom"; and

(2) Part of Section 61 of said Chapter, "Obstructing Passage," as follows: "No vehicle shall stand on any street so as to interrupt or interfere with the passage of public conveyances or other vehicles."

And, in this connection, A. E. Guy, City Clerk and Treasurer of the city, as witness for plaintiff, testified on cross-examination: "I do not think there were any forty-five degree spaces marked off on Shelton Avenue during last December."

It is noted that no evidence was offered tending to support the third allegation of negligence as hereinabove set out. While the coroner, testifying in corroboration of Mrs. Clark, stated that "she said that the left rear of the large truck was out in the street, and that its color was green," she does not advert to the color in her testimony. Nor does anyone else.

Motion of defendant for judgment as in case of nonsuit made at the close of plaintiff's evidence was allowed, and from judgment in accordance therewith plaintiff appeals to Supreme Court and assigns error.

*R. A. Hedrick and J. G. Lewis for plaintiff, appellant.*

*Scott & Collier, Smathers & Carpenter, and Wm. B. Webb for defendant, appellee.*

WINBORNE, J.   This is the pivotal question: Considering the evidence shown in the case on appeal contained in the record, in the light most favorable to plaintiff, is there sufficient evidence to take the case to the jury?   The trial court did not consider it sufficient and, with his ruling, we agree.

This case is controlled by principles of intervening negligence applied in decisions of this Court in *Smith v. Sink,* 211 N.C. 725, 192 S.E. 108; *Powers v. Sternberg,* 213 N.C. 41, 195 S.E. 88; *Butner v. Spease,* 217 N.C. 82, 6 S.E. 2d 808.

In *Smith v. Sink, supra,* opinion by *Stacy, C. J.,* it is stated that "In negligence cases, it is proper to sustain a demurrer to the evidence and to enter judgment of nonsuit: 1. When all the evidence taken in its most favorable light for plaintiff, fails to show any actionable negligence on the part of the defendant . . . 2. When it clearly appears from the evidence that the injury complained of was independently and proximately produced by the wrongful act, neglect, or default of an outside agency or responsible third person." Cases are there cited in respect to each principle.

In *Smith v. Sink* it is also said: "We had occasion to examine anew this doctrine of insulating the conduct of one, even when it amounts to passive negligence, by the intervention of the active negligence of an independent agency or third party, as applied to variant fact situations, in the recent case of *Beach v. Patton,* 208 N.C. 134, 179 S.E. 446," and others cited. Then, continuing: "These decisions, and others, are in full support and approval of Mr. Wharton's statement in his valuable work on Negligence (Sec. 134): 'Supposing that if it had not been for the intervention of a responsible third party the defendant's negligence would have produced no damage to the plaintiff, is the defendant liable to the plaintiff?   This question must be answered in the negative, for the general reason that causal connection between negligence and damage is broken by the interposition of independent responsible human action. I am negligent on a particular subject matter.   Another person, moving independently, comes in, and either negligently or maliciously so acts as to make my negligence injurious to a third person.   If so, the person so intervening acts as a non-conductor, and insulates my negligence, so that I cannot be sued for the mischief which the person so intervening directly produces.   He is the one who is liable to the person injured.' "   Then there follows, to like effect, a quotation from *R. R. v. Kellogg,* 94 U.S. 469.

Ryan v. Trust Co.

And in *Powers v. Sternberg, supra,* this Court said: "Even if it be conceded that defendant's truck was negligently parked on the side of the road . . . which may be doubted on the facts revealed by the record . . . still it would seem that the active negligence of the driver of the Beden-baugh car was the efficient cause of plaintiff's intestate's death." And, again, "The parking of the truck, if a remote cause, was not the proximate cause of the injury. The conduct of Wallis would have produced no damage but for the active intervening negligence of Bedenbaugh. This exculpates the defendants."

In the light of these principles, even if it be conceded that the truck of defendant was negligently parked on the side of Shelton Avenue, which may be doubted on the facts revealed by the record, it would seem that the active negligence of the operator of the Clark truck was the real, efficient cause of the death of plaintiff's intestate. It is clear that the operator of the Clark truck was driving either without sufficient lights, or without keeping proper lookout ahead, when there was nothing on the street to prevent him seeing the parked truck. It is also clear that there was abundant space for the Clark truck to pass the parked truck in safety.

Consideration has been given to other exceptions, and error is not made to appear.

While as in *Hammett v. Miller,* 227 N.C. 10, 40 S.E. 2d 480, the case presents a deplorable, tragic, and untimely ending of a young life, the evidence is insufficient to support a finding that it was proximately caused by the parking of the truck of defendant. Other causes are apparent.

Affirmed.