HARRIS EXPRESS, INC., v. T. B. JONES, JR.

(Filed 26 November, 1952.)

**1. Trial § 22b—**

Where plaintiff's witness testifies as to statements made by defendant, and defendant testifies in explanation and clarification thereof, defendant's testimony is competent to be considered on plaintiff's motion to nonsuit.

**2. Automobiles §§ 8d, 18h (3)—Evidence held to show contributory negligence as a matter of law on part of driver sideswiping rear of trailer standing on highway.**

Plaintiff's evidence tended to show that defendant was driving his tractor-trailer at night along a four-lane highway and stopped on the right shoulder to investigate motor trouble, leaving the left rear of the trailer projecting over the hard surface for some two feet, that plaintiff's driver was proceeding in the same direction in the right-hand traffic lane and, because partly blinded by the lights of approaching vehicles, was watching the line marking his traffic lane and did not see defendant's trailer until the right side of his trailer collided therewith. *Held:* The evidence discloses contributory negligence as a matter of law on the part of plaintiff's driver, and nonsuit was properly entered. As to whether the evidence disclosed a "parking" of defendant's tractor-trailer within the meaning of G.S. 20-161 (a) and as to whether the evidence disclosed that rear lights of defendant's tractor-trailer were not burning, *quære?*

ERVIN, J., dissenting.

JOHNSON, J., concurs in dissent.

PARKER, J., took no part in the consideration or decision of this case.

APPEAL by plaintiff from *McLean, Special Judge,* at 12 May, 1952, Extra Civil Term, of MECKLENBURG.

Civil action to recover for property damage allegedly resulting from actionable negligence of defendant in which upon trial in Superior Court judgment of nonsuit was entered at close of all the evidence.

Plaintiff alleges in its complaint, and defendant admits in his answer, that at about 12:45 a.m., on 19 November, 1950, a semi-trailer owned by it was being operated in a northerly direction along U. S. Highway No. 29 at a point approximately four miles south of Salisbury in Rowan County, North Carolina, and that a collision occurred between the right front of its semi-trailer and the left rear corner of defendant's semi-trailer.

Plaintiff also alleges in substance the following: That at the time of the collision a tractor and trailer owned and operated by defendant was parked on the right-hand side of U. S. Highway No. 29; with left rear corner thereof extending over the pavement, so as to block a portion of the extreme east or right-hand edge of the pavement; that as plaintiff's trailer was being operated in a northerly direction along the highway at a reasonable rate of speed, the driver met two vehicles traveling in the opposite

direction—the lights of those vehicles shining in his eyes; and that he did not observe that defendant's trailer had been so parked, and without any negligence on his part, the collision occurred, and by reason thereof plaintiff's trailer, and the cargo being transported therein, were damaged in specified sum.

Plaintiff further alleges that the collision and damage were the proximate result of the negligence and carelessness of the defendant, in that he parked a tractor and trailer (a) on the shoulder of the highway with left rear corner of it extending over and partially blocking the pavement, (b) without sufficient lights or other warning signals thereon, (c) and failed to display not less than 200 feet to the front and rear of the vehicle a warning signal in violation of G.S. 20-161, and (d) left same in such position that he knew or should have known that it would endanger other traffic moving in a northerly direction along said highway.

Defendant, answering the complaint, denies in material aspect the allegations therein contained, except as covered by the admissions hereinabove first stated.

And defendant, as a further answer and defense, avers in substance that the driver of plaintiff's tractor and semi-trailer, while acting as the agent and servant of plaintiff and in the course and scope of his employment, was negligent in that he failed: (a) to keep a proper lookout for vehicles in or about the highway, (b) to have plaintiff's tractor and semi-trailer under control, (c) to stop within the range of its headlights, and (d) to operate same at a reasonable rate of speed under the existing circumstances, and by such negligence contributed to and proximately caused the collision and damage of which complaint is made, and such contributory negligence is pleaded in bar of plaintiff's right to recover in this action.

And defendant set up and pleaded a counterclaim arising out of the same collision as that on which plaintiff bases its action,—details of which need not be stated here since the nonsuit was granted on motion of defendant, and he does not appeal.

Upon the trial in Superior Court evidence offered by plaintiff tends to show these facts: At the time of the collision U. S. Highway No. 29 was paved—approximately 40 feet in width—the driver of plaintiff's tractor and semi-trailer saying 48 feet—with shoulder on the east side about 15 feet wide. There were painted lines on the pavement indicating two lanes for northbound traffic, and two lanes for southbound traffic. At the scene of the accident the highway is straight and level,—there being a crest of a rise about 100 yards south of the point of the accident.

There were involved in the accident (1) a White tractor owner by R. C. McCord, pulling a trailer owned by plaintiff, and operated by one Eugene J. Helms, and an International tractor and semi-trailer owned

and operated by defendant. Both were traveling northerly. Plaintiff's trailer was about six inches wider than the tractor which was pulling it. The width was estimated to be twelve feet two inches.

And the following is pertinent testimony of witnesses for plaintiff:

W. M. Anthony, a member of the North Carolina State Highway Patrol, testified: "I investigated the accident . . . at the time I reached the scene . . . the tractor and trailer of Mr. Jones was headed north and was on its right-hand or the east shoulder. The left rear trailer wheel was 6 inches . . . and the left front tractor wheel was 18 inches east of the east edge of the pavement. The left rear corner . . . had been damaged.

"The Harris Express tractor and trailer was also headed north, and was located on the right-hand or east shoulder, and was some distance beyond, or north, of the defendant's tractor and trailer. The right-hand side . . . had been ripped open, and bolts of yarn were scattered about for about a block.

"I saw no marks on the shoulder immediately south of the Jones vehicle. Mr. Jones was present and told me that he had stopped because of some engine trouble and had done some work on his engine immediately prior to the accident.

"I saw no flares about the scene. There were red lights on the rear of Mr. Jones' trailer but those lights were dim.

"There were marks on the pavement opposite the Jones trailer and located a few inches to the left or west of the east edge of the pavement."

Eugene J. Helms, by deposition, testified: "On November 19, 1950, I was employed by Harris Express as a truck driver. On the night of November 18 I left Charlotte to drive a White tractor and semi-trailer to New York . . . about 11:10 or 11:15 P. M. Shortly after midnight on the morning of November 19, I was involved in an accident.

"North of Kannapolis, N. C., I was traveling along a four-lane highway, and met two automobiles which were traveling side by side. I dimmed my lights a couple of times. The automobile on the outside lane dimmed its lights, but the one on the inside did not. The car which did not dim its lights was the one closest to me.

"When the cars were about 100 or 150 feet from me, one was moving towards me a little bit, and I eased over. About that time I struck the tractor and trailer parked on the right-hand side of the road. The tractor was parked about 8 feet off the pavement . . . and the back of the trailer . . . the left corner . . . going in the direction I was going, was about two feet over the paved portion of the highway.

"After I entered the four-lane stretch of highway I was running 40 or 45. I slowed down, and at the time of this collision I was running around 30 miles an hour—not over 30 miles . . .

"Immediately prior to the collision my tractor and trailer unit was completely on the highway, and before the collision no portion of my tractor or trailer had left the paved portion of the highway."

Then the witness was asked these questions and gave answers as shown:

"Q. When did you first see this tractor-trailer unit that was parked along the east side of the highway? A. When I hit it. Q. You hadn't seen it prior to then? A. No. He didn't have his flares or anything out, fusees, flares or anything out."

Then the witness continued: "After the collision my unit traveled 15 feet. I pulled off on the shoulder. I went back to the other unit, and there was a man standing in front of the truck. A State Patrolman came to the scene about 5 minutes after the accident happened. The right front corner of my trailer hit the left rear corner of the other trailer. There were marks on the pavement made by my tires. The right tires made the marks. The collision jerked the trailer around as I put on brakes."

Then the witness was asked in pertinent part the following questions to which he answered as shown:

"Q. What was the condition of the road that night? A. Fair, sort of foggy. Q. Foggy? A. Not foggy, but you know late at night like that the dew starts falling. Q. And you had a little trouble with the visibility, didn't you? A. Yes, Sir, with lights in front of me. Q. How far can you see either way from the point where the collision took place? A. About a half mile. I was traveling . . . in the extreme right-hand lane . . . The highway has a center line on it. Q. You could see the center line? A. Yes, Sir, by looking down close. The cars in front of me had me blinded, and I was looking down at the line so I couldn't get over the line. Q. You were using that as a guiding spot to keep you in the road? A. Yes, Sir. Q. And you didn't see any vehicle in front of you until you came to within 100 feet of it? A. I didn't see it then. Q. You didn't see it then? A. No, Sir. There was nothing between me and the vehicle with which I collided. I did not see any flares nor any red lights. The cab of my tractor had passed the parked trailer before the collision took place . . . Q. Now, were the vehicles in front of you that you came in contact with in motion at the time? A. Yes, Sir, the two cars meeting me had me blinded and I wasn't looking at the right-hand side. I was looking at the line. Q. You had your eyes centered on the center line; you weren't looking in the immediate direction straight ahead, were you? A. No, Sir. Q. You never did take your eyes off the center line of that roadway, did you? A. No, Sir. The cars had me blinded, and I was keeping on my side so nobody would side-swipe me."

Then on re-direct examination, the witness concluded by saying: "My vision was obscured by a reflection of the lights of approaching cars. When there were no cars approaching, I could see 300 yards."

When plaintiff first rested its case, motion of defendant for judgment as of nonsuit was overruled. Then defendant, reserving exception thereto, testified in pertinent part as follows: "I own the tractor and trailer which was involved in the accident . . . My engine began to miss, and I pulled to the right shoulder to see about it . . . I stopped on the shoulder . . . I had completely checked my engine, and was standing near the tractor preparing to get into it when the collision occurred . . ."

Defendant's motion for judgment as of nonsuit, renewed at the close of all the evidence, was allowed, and from judgment in accordance therewith plaintiff appeals to Supreme Court, and assigns error.

*Covington & Lobdell for plaintiff, appellant.*
*Robert D. Potter and B. Irvin Boyle for defendant, appellee.*

WINBORNE, J. Testing the evidence offered by plaintiff and so much of defendant's evidence as is favorable to plaintiff, or tends to explain and make clear that which has been offered by the plaintiff, in this case, *Rice v. Lumberton,* 235 N.C. 227, 69 S.E. 2d 543, it may be fairly doubted that there is shown any evidence of actionable negligence on the part of defendant. *Morris v. Transport Co.,* 235 N.C. 568, 70 S.E. 2d 845.

Here, as in the *Morris case,* the uncontradicted statement of defendant, offered in evidence by plaintiff through its witness, Patrolman Anthony, and explained by the testimony of defendant, refutes the theory of "a parking" of defendant's tractor-trailer at the place of the collision in question, within the meaning of the statute G.S. 20-161 (a) as amended by Chap. 165 of 1951 Session Laws of North Carolina. (See discussion in the *Morris case.*)

Likewise as to permitting the tractor-trailer of defendant to be on the highway without lights. The factual situation here is so similar to that in the *Morris case* that what is said there in this respect is applicable and appropriate here.

But if it be conceded that defendant was negligent in some respect alleged in the complaint, it is manifest that the driver of plaintiff's tractor-trailer was negligent in the operation of it, and that such negligence was the proximate cause, or at least one of the proximate causes of the collision and property damage of which complaint is here made.

The case comes within and is controlled by the principles enunciated and applied in *Weston v. R. R.,* 194 N.C. 210, 139 S.E. 237, the *Morris case, supra,* and the list of cases cited in the *Morris case* at pp. 576-577, as well as in the case of *Morgan v. Cook, ante,* 477. Compare *Hammett v. Miller,* 227 N.C. 10, 40 S.E. 2d 480, and *Clark v. Lambreth,* 235 N.C. 578, 70 S.E. 2d 828.

Hence the judgment below is
Affirmed.

ERVIN, J., dissenting: When I construe the evidence in the light most favorable to the plaintiff, I reach the deliberate conclusion that it makes out this case:

The defendant knowingly permitted the rear end of the semi-trailer drawn by his disabled road tractor to project onto the main traveled part of a congested highway on a dark and cloudy night. While so doing, he violated G.S. 20-134 by failing to exhibit a red tail light at the rear of his semi-trailer, and G.S. 20-161 by failing to display red flares to warn approaching motorists of the impending peril. The plaintiff's north-bound motor vehicle came upon the scene from the rear in the charge of a driver who was keeping a proper lookout and proceeding at a reasonable speed. As the plaintiff's motor vehicle neared the rear of the defendant's stationary and unlighted semi-trailer, it met a motor vehicle which was moving along the highway in the opposite direction. This southbound motor vehicle projected glaring headlights into the face of the plaintiff's driver, blinding him and compelling him to fix his gaze on the painted line marking the inner edge of his traffic lane in order to avoid collision with the approaching vehicle. As a consequence of these events, the plaintiff's driver was unable to see the stationary and unlighted semi-trailer of the defendant in time to avoid striking it.

For this reason, I am of the opinion that the question of whether the defendant was guilty of actionable negligence and the question of whether the plaintiff's driver was guilty of contributory negligence were for the jury.

I am unable to give my assent to the legal premise which necessarily underlies the decision of the majority—that the law imposes upon the nocturnal motorist the absolute and unvarying duty not to move a motor vehicle along a highway at all unless he has a complete knowledge of all obstructions lying ahead, no matter how unexpectable and unperceivable those obstructions may be. This legal premise requires of the nocturnal motorist an infallibility not possessed by any man who ever traveled over the earth's surface by motor vehicle or otherwise.

JOHNSON, J., concurs in dissent.

PARKER, J., took no part in the consideration or decision of this case.