**TOWE v. STOKES et al.**
**Civ. A. No. 464.**

United States District Court
M. D. North Carolina.
Jan. 11, 1954.

Deal, Hutchins & Minor, Winston Salem, N. C., for plaintiff.

Smith, Sapp, Moore & Smith, Greensboro, N. C., for defendants.

HAYES, Judge.

On November 20, 1952, John T. Stokes owned tractor-trailer unit. He employed defendant George S. Willard to drive this unit from Abingdon, Va., to Sanford, N. C. The trailer was a flat bed on which hogsheads of tobacco were piled and covered with an old black faded canvas which gave it the appearance of the pavement on U. S. Highway 52 in the vicinity of Mt. Airy, N. C., where plaintiff was injured when her automobile collided with it. The accident occurred about 1½ mile north of Mount Airy at approximately 6:45 A.M.

The battery on the tractor was too weak to start the tractor at Abingdon. After passing a curve, the unit continued toward Mt. Airy until Clifton—Willard's companion who was along to drive Willard's car back to Mt. Airy—notified Willard that the rear wheel on the left-hand side was on fire. Willard drove on down the road about 100 yards and stopped the unit to put out the fire. The road was straight for 1000 ft. from the curve to the point where he stopt the unit.

After putting out the fire, Willard couldn't start the motor on account of the weak battery, so he left the unit standing in the right lane of the two lane highway at around 5 o'clock A.M. It was raining and a heavy fog enveloped the area. The highway was a through road from Mt. Airy, and points south to Hillsville, Va., and points north. From 5 A.M. to 7 A.M. workers were driving into Mt. Airy for their daily tasks. Notwithstanding the weather conditions and difficulties preventing visibility, defendants did not put out flares at least 200 ft. to the rear of the trailer as required by the North Carolina statute, in fact there were no lights at all displayed from the rear of the unit when the accident occurred. There were smudge pots on the truck but Willard claimed he was unable to find them. Rev. Journey lived within 75 ft. of the scene but they did not go out there to get a light to warn traffic of the trap left in the highway. Instead Willard told his companion Clifton to stay there and direct traffic until he could go to Mt. Airy and get a wrecker, but Clifton had no light to waive traffic down and it is difficult to see how a motorist could see him any quicker than he could see the trailer.

Willard contacted a wrecker and returned to the scene around 6 o'clock A. M. and again went away after his wife without taking the precaution then to see that adequate lights and warnings were given to the people approaching this obstruction in the public highway. After he left, at least two cars loaded with workers going to Mt. Airy between 6:30 A.M. and 6:45 A.M. almost ran into this outfit because of no lights whatever to indicate the obstruction in the road and they barely escaped by dodging to the left and missing it.

At about 6:40 A.M. the wrecker pulled up by the side of the unit. Its lights were burning. The plaintiff had then rounded the curve and was traversing the 1000 ft. of straight road, driving with the fog lights on, and at a reasonable speed, not in excess of 30 miles per hour, and keeping a proper lookout. She saw the lights of the oncoming car —the wrecker but not then known to her to be the wrecker—and she could and would have seen the lights on the trailer if there had been any shining. Assuredly she would have seen flares if they had been displayed 200 feet to the rear of the trailer.

When plaintiff first saw the trailer, it and the road and darkness all had virtually the same appearance to her. The canvas cover over the trailer was substantially the same as the road. She was about two or three car lengths from it and applied her brakes immediately; she felt the car skid; it did not appear to her that she could pass the trailer to the left without hitting the wrecker and, fearing the consequences of her car skidding, she released the brake and again put her foot on the brake but by that time the car had run into the trailer. The driver of the wrecker admits he was pulling by the trailer in low gear as the car passed and collided with the trailer. He immediately pulled the wrecker behind her car so his lights would prevent anyone running into her car. He also admits his lights were burning on dim all the time and that immediately before the collision he was talking with Clifton and the entire evidence shows that Clifton gave no warning whatever to the plaintiff.

At the close of the evidence the defendants moved for a verdict in their favor on the ground that the defendants were not negligent, and if negligent, that it was not the proximate cause; and further that plaintiff was guilty of contributory negligence as a matter of law. It was the contention of the defendants that Chaffin v. Brame, 233 N.C. 377, 64 S.E.2d 276, had been overruled by Morris v. Jenrette Transport Co., 235 N.C. 568, 70 S.E.2d 845, Harris Express, Inc. v. Jones, 236 N.C. 542, 73 S.E.2d 301, and Hooks v. Hudson, 237 N.C. 695, 75 S.E. 2d 758. The motion was denied and the court found the facts appearing of record, finding the negligence of the defendants was the proximate cause of the in-

jury and damage to her car, and that she was not guilty of any negligence on her part which contributed to and proximately caused her injury.

As to the law of this case, the court was and still is of the opinion that Chaffin v. Brame above is the North Carolina law controlling under the facts of this case, and that the Fourth Circuit in Imperial Tobacco Co., Limited, of Great Britain and Ireland v. Lambe, 77 F.2d 90, and Morris v. Sells Floto Circus, 4 Cir., 65 F.2d 782, had followed the same legal principles and applied them in accordance with the law of North Carolina, as both cases arose in North Carolina. This case was tried in November and during the same week, the Fourth Circuit decided another case of like nature and approved the law so ably stated in Chaffin v. Brame, supra; United States v. Livesay [United States v. First-Citizens Bank & Trust Co.], 4 Cir., 208 F.2d 280.

This court has carefully considered the authorities relied on by the defendants and is unable to agree either that the later cases overrule Chaffin v. Brame or control on the facts of the instant case. Hooks v. Hudson, supra, is inapplicable because plaintiff was guilty of contributory negligence in following too close to the car in front of him and the parked automobile was in broad daylight. Hollifield v. Everhart, 237 N.C. 313, 74 S. E.2d 706, is a case where plaintiff's remedy was against the car following her too closely. This also occurred in daylight. Harris Express Inc. v. Jones, supra, is a case where the plaintiff driving north on a four lane highway became blinded by a car meeting him on the lane nearest the center of the 40 ft. road and plaintiff was watching the center line (white line) and did not see the defendant's truck (all of which was on the shoulder except about two feet of trailer projected on the pavement) until he hit it. Since plaintiff was not looking in front of where he was driving and never saw the truck until he hit it on a fair night, he was guilty of contributory negligence as a matter of law. It was in-

dicated in the opinion that the tractor had merely stopped momentarily and was not "parked". Moreover, the court said [236 N.C. 542, 73 S.E.2d 304]: "But if it be conceded that defendant was negligent in some respect alleged in the complaint, it is manifest that the driver of plaintiff's tractor-trailer was negligent in the operation of it, and that such negligence was the proximate cause, or at least one of the proximate causes of the collision and property damage of which complaint is here made." In Morris v. Jenrette Transport Co., supra [235 N.C. 568, 70 S.E.2d 852], the court held that the tractor-trailer was not "parked" within the meaning of the statute as it stopped momentarily and plaintiff ran into it before defendant's driver got out of the cab. The court properly held plaintiff guilty of contributory negligence and again quoting from the opinion: "He says that while completely blinded by the bright lights of an oncoming car, he drove 'for 5 or 6 seconds' at a speed of forty two miles per hour" and did not see the truck until he was within 15 to 18 feet of it and too late. to miss it.

The defendants insist that the plaintiff picked up the truck by her dim lights when she got within three car lengths and under normal conditions could have stopped her car and that this makes her guilty of contributory negligence as a matter of law. They omit her other testimony to the effect that she was prevented from seeing the parked trailer because of its similar appearance to the road and the darkness and fog and that it suddenly loomed up before her; that she saw the lights of the oncoming car the driver of which admits he had them dim. His lights were not blinding her and she was not driving at a high rate of speed but proceeding cautiously and keeping a vigilant lookout. Plaintiff did precisely what the court said in Chaffin v. Brame, supra [233 N.C. 377, 64 S.E.2d 279], from which the following is quoted:

"The duty of the nocturnal motorist to exercise ordinary care for his

own safety does not extend so far as to require that he must be able to bring his automobile to an immediate stop on the sudden arising of a dangerous situation which he could not reasonably have anticipated. Any such requirement would be tantamount to an adjudication that it is negligence to drive an automobile on a highway in the nighttime at all. The law simply decrees that a person operating a motor vehicle at night must so drive that he can stop his automobile or change its course in time to avoid collision with any obstacle or obstruction whose presence on the highway is reasonably perceivable to him or reasonably expectable by him. It certainly does not require him to see that which is invisible to a person exercising ordinary care. It is a well established principle in the law of negligence that a person is not bound to anticipate negligent acts or omissions on the part of others; but in the absence of anything which gives or should give notice to the contrary, he is entitled to assume and to act upon the assumption that every other person will perform his duty and obey the law and that he will not be exposed to danger which can come to him only from the violation of duty or law by such other person. * * *

"When the plaintiff undertook to drive his automobile on the public highway during the nighttime, he had the right to act upon the following assumptions until he had notice to the contrary: (1) That no other motorist would permit a motor vehicle either to move or to stand on the highway without displaying thereon a lamp projecting a red light visible under normal atmospheric conditions from a distance of five hundred feet from its rear, G.S. 20–129(d), 20–134; (2) that the driver of any truck becoming disabled on the highway after sundown would display red flares or lanterns at least two hundred feet to the rear of the disabled truck as a warning to approaching motorists of the impending peril, G.S. 20–161; * * *.

"The plaintiff had no reason whatever to anticipate or expect that the defendant's truck had been left standing on the traveled portion of the highway ahead of him without lights or warning signals until his car came within 30 feet of it. He did everything possible to avert the collision just as soon as the truck became visible."

■ When plaintiff, without negligence on her part, discovered the truck, she was confronted with a situation of great peril and sudden emergency. In such a situation she is not held by the law of North Carolina to the wisest choice of conduct but only to such choice as a person of ordinary care and prudence, similarly situated, would have made. Goode v. Barton, 238 N.C. 492, 499, 78 S.E.2d 398.

■ The evidence sustains a finding that plaintiff was injured by the negligence of the defendants which proximately caused her injury and it likewise supports the finding by the court that she was not guilty of contributory negligence which proximately caused her injury. She traveled this road daily to and from her work. No person familiar with the highway at that place where it was practically straight and almost level —at least in view for a thousand feet— would anticipate that a tractor-trailer would be left for an hour and three quarters without some lights as required by law to warn of its presence. Such conduct on the part of the defendants was nothing less then setting a trap, under the conditions then prevailing, to endanger life and limb. To charge plaintiff with failing to see that which was invisible and to anticipate that which was unknown to her and not reasonably to be expected would punish the innocent and exonerate the guilty; it would be a mockery of justice.