VIRGINIA MANESS BRADY v. NEHI BEVERAGE COMPANY, INC. (ORIGINAL DEFENDANT) AND LESTER W. BRADY (ADDITIONAL DEFENDANT).

(Filed 13 April, 1955.)

**1. Automobiles § 18h (6)—**

The allegations of plaintiff's complaint predicated recovery upon the theory that defendant's truck entered the intersection with a dominant highway from a private road or drive, and failed to stop and yield the right of way as required by statute, G.S. 20-156; G.S. 20-158. The evidence showed that the highway upon which plaintiff was traveling was paved, and that the highway upon which defendant's truck was traveling was unpaved, but also that the two roads were public roads and that neither had been designated by the State Highway and Public Works Commission as a through highway. *Held:* There was material variance between the allegations and proof.

**2. Pleadings § 24—**

Plaintiff must make out her case according to her allegations, and the court cannot take notice of any proof unless there be corresponding allegation.

**3. Trial § 23f—**

Where there is a material variance between allegation and proof, such defect may be taken advantage of by motion for judgment as of nonsuit.

**4. Trial § 22b—**

Upon motion to nonsuit, defendant's evidence, unless favorable to the plaintiff, is not to be taken into consideration, except when not in conflict with plaintiff's evidence, it may be used to explain or make clear that which has been offered by plaintiff.

**5. Automobiles § 8i—**

Where a dirt road makes a "dead-end" intersection with a paved highway, but both highways are public roads, and neither has been designated as a through highway, G.S. 20-158 (a), both roads are of equal dignity, and a vehicle traveling along the dirt highway and first in the intersection in making a left turn into the paved highway, has the right of way over a vehicle approaching the intersection along the paved highway from the left. G.S. 20-155 (a).

**6. Same—**

The "right of way" at an intersection means the right of a driver to continue in his direction of travel in a lawful manner in preference to another vehicle approaching the intersection from a different direction.

**7. Same—**

A driver having the right of way is not required to stop, and may act upon the assumption, in the absence of notice to the contrary, that another motorist approaching the intersection will recognize his right of way and grant him free passage over the intersection.

**8. Automobiles § 18h (2)—Evidence held to show that truck driver had right of way and was not guilty of negligence causing collision at intersection.**

The evidence favorable to plaintiff tended to show that she was a guest in a car operated by her husband, which was traveling along a paved highway toward an intersection with a dirt road, that a truck entered the intersection at a slow and lawful speed from the dirt road, to make a left turn into the paved road, but that both roads were public highways of equal dignity, and that the truck first entered the intersection from the right of the car in which plaintiff was riding. The left front of the car struck the truck on its left side at about the rear wheels after the front of the truck had cleared the intersection and was on its right side, but with its rear extending over plaintiff's lane of travel. *Held:* The driver of the truck had the right of way and was not required to stop, and had the right to assume and act upon the assumption, in the absence of notice to the contrary, that the operator of the car would yield to him the right of way, and therefore the evidence fails to show negligence on the part of the truck driver, and motion to nonsuit by the owner of the truck should have been allowed.

BARNHILL, C. J., and DEVIN, J., took no part in the consideration or decision of this case.

APPEAL by original defendant Nehi Beverage Company, Inc., from *Armstrong, J.*, at 22 March, 1954 Civil Term of MOORE.

Civil action to recover damages for personal injuries allegedly resulting proximately from negligence of original defendant, Nehi Beverage Company, Inc., in respect to a collision which occurred about 2:15 p.m. on 21 May, 1952, between Chevrolet automobile owned and operated by plaintiff's husband, Lester W. Brady, the additional defendant, in which she was riding, and a truck owned by said original defendant, and operated by its servant and agent, Ray A. Harwood, in distributing soft drinks to customers in Moore County, North Carolina. The collision took place on the Bennett-Robbins Road at the Howard Mill road.

Plaintiff alleges in her complaint substantially these pertinent facts in respect to the collision: That at the time the plaintiff was riding with her husband, Lester Brady, sitting in the front seat "when a large truck of defendant entered the highway from a side road behind a high bank and came into the road within 60 feet of the car in which plaintiff was riding and she was injured" as thereinafter "more particularly set forth"; "that as the truck of defendant was suddenly driven out into the road in front of the automobile in which plaintiff was riding, and that the direct and proximate cause of the injuries to this plaintiff was the negligence and carelessness of defendant as herein set forth in particular," (numbered by this Court) as follows:

(1) "That there was a large and high bank to the left of the direction in which the truck was being driven and said truck was driven from

behind said bank out into said highway within 60 feet of approaching traffic";

(2) "That the operator of said truck" (a) "drove it into the said highway from a side road without looking to see approaching traffic"; (b) "failed to heed the sound of the horn of the car in which the plaintiff was riding and came out into the highway without stopping and continued to drive at such an angle as to block the said road"; (c) "failed to use due caution and circumspection and entered the highway from a blind road which was not an intersection nor a cross-road"; (d) "entered the highway in such a reckless and careless manner as to be a thoughtless and heedless disregard of the safety and rights of others upon said highway"; and (e) "entered the highway from a blind side of the road within 60 feet of the automobile in which the plaintiff was riding and drove said truck out into a main highway without observing or looking or heeding the warning horn of the automobile in which the plaintiff was riding, thereby causing a collision, the direct and proximate cause of her injuries in a large sum . . ."

The defendant, Nehi Beverage Company, Inc., answering, denies in material aspect each of the foregoing allegations of the original complaint. And further answering the complaint, and as a further defense thereto, defendant, Nehi Beverage Company, Inc., avers and says:

"A. That defendant's 1948 Dodge truck was being operated near what is known as Howard's Mill in Moore County, North Carolina, by the defendant's agent and servant, Ray A. Harwood, who had driven said truck to Howard's Mill where he had made a delivery of bottled drinks and had just left Howard's Mill, and, driving in a northeastern direction, was approaching the intersection of the road from Howard's Mill with the highway leading from Bennett, North Carolina, to Robbins Bridge; that he came almost to a complete stop,—operating same at a speed of not over 5 or 10 miles per hour; that he looked both to his left and right as he approached the intersection of the road with said highway, and seeing nothing approaching from either direction along said highway, slowly entered into said highway and commenced to turn to his left; that when the truck had almost fully entered said highway and the front of it was on its right and proper side of said highway and only a small portion of the rear of said truck was remaining on the left side thereof, the automobile in which plaintiff was riding, and which was being driven by her husband, Lester Brady, in a southerly direction along said highway or county road from Bennett, North Carolina, to Robbins Bridge, and operated by said Brady in a careless, reckless manner and without keeping a proper lookout, and at a high, dangerous and reckless rate of speed, ran into and collided with the left rear end of the truck; that notwithstanding that Harwood did everything in his

BRADY *v.* BEVERAGE CO.

power to avoid the collision of the automobile with the truck, he was unable to do so because of the negligent, careless and speedy operation of the automobile driven by said Brady.

"(B) That at the time of the matters and things alleged in the complaint, plaintiff's husband, was negligent in some one, more or all of the following particulars, to wit:

"(1) He operated his automobile at a high, negligent and dangerous rate of speed . . . greater than was reasonable and proper under the circumstances in violation of G.S. 20-141.

"(2) He operated his automobile upon the public highways of the State of North Carolina carelessly and heedlessly, in willful or wanton disregard of the rights and safety of others and without due caution and circumspection, and at a speed and in a manner so as to endanger or to be likely to endanger any person or property using said highway, in violation of G.S. 20-140.

"(3) He failed to reduce the speed of his automobile when going around a hill and a curve and traveling upon a narrow and winding roadway when special hazard existed with respect to other traffic thereon, in violation of G.S. 20-141 (c).

"(4) Notwithstanding plaintiff was familiar with the conditions surrounding the highway at the point where the collision referred to in the complaint occurred, he negligently failed to give any warning of his approach to the intersection at which defendant's truck was being operated.

"(5) He failed to keep a proper lookout for traffic lawfully using said highway.

"(6) He was negligent in other particulars not herein specifically enumerated."

"C. That the injuries to plaintiff, if any, and the resulting damage, if any, all of which are again denied, were caused solely and proximately by the negligence of her husband, Lester Brady, in some one, more or all of the particulars set forth in this further answer and defense, and defendant hereby pleads said sole negligence on the part of plaintiff's husband, Lester Brady, in bar of plaintiff's right to recover of it in this action."

Thereafter on pretrial hearing, at the 8 February, 1954 Term of Civil Court, plaintiff and original defendant, each being represented by counsel, an order was entered, first reviewing the allegations of the complaint and the averments of the answer and then

"2." it was "judicially stipulated in open court by all parties to the action:

"(a) That at the time and place mentioned in the pleadings, Ray Harwood was the employee, agent and servant of the defendant Nehi

Beverage Company, Inc., Albemarle, N. C., and acting in the scope of his employment and in the furtherance of the business of said Nehi Beverage Company, and as such employee, agent and servant, and that the vehicle operated by Harwood was a 1948 Dodge truck owned by the defendant Nehi Beverage Company, Inc.

"(b) That said collision occurred on a paved, public highway in Moore County, N. C., outside of a business or residential district.

"(c) That five pictures, marked Plaintiff's Exhibits Nos. 1, 2, 3, 4 and 5, are pictures taken of various views of the scene of the collision referred to in the pleadings, and were taken on April 20, 1953, and correctly and fairly represents the scene of said collision, and may be offered in evidence without further proof for illustrative purposes, and the court shall so explain to the jury fully upon the offering of said pictures the purpose for which they are offered.

"(d) That a map, Defendant Beverage Company Exhibit 1, correctly and fairly represents the place of the collision mentioned in the pleadings, and may be introduced for illustrative purposes, at which time the court shall explain to the jury such evidence and how it is to be considered without further proof.

"3. The plaintiff contends that the defendant Nehi Beverage Company was negligent in the following respects: (a) Failed to keep a reasonable lookout; (b) That the defendant violated G.S. 20-140, the reckless driving statute; (c) That the operator of said truck entered said highway from a blind side of the road within 60 feet from the automobile in which plaintiff was riding, without observing or looking or heeding the warning horn of the automobile in which plaintiff was riding, in violation of G.S. 20-158.

"4. The court in its discretion allows Nehi Beverage Company to amend its Answer.

"5. Subject to further developments at trial, the court settled the issues . . ."

Thereafter at 22 March Civil Term 1954, by permission of the court, plaintiff filed the following amendment to her complaint:

"1. The plaintiff is informed, advised, believes and alleges that Ray A. Harwood was the driver and operator of the defendant's Dodge truck at the time of the collision of said truck and the Chevrolet automobile of Lester Brady in which plaintiff was riding, and the agent or employee of the defendant, and in the course of his employment as the operator of said truck at the time of the said collision.

"2. That at the time of and immediately preceding the said collision, the defendant's agent and employee was negligent in that: (a) He entered a public highway from a private road or drive and failed to yield the right of way to all vehicles approaching on such public high-

way, including the automobile in which plaintiff was riding, in viola-
tion of G.S. 20-156; (b) He failed to stop at the public highway upon
which the automobile in which plaintiff was riding was traveling and
proceeding in violation of G.S. 20-158."

The record shows defendant Nehi Beverage Company, Inc., denied
the foregoing amendments, and was permitted, if it so desire, to file a
written denial.

Thereafter defendant Nehi Beverage Company, Inc., by leave of
court, amended its answer theretofore filed, and added to paragraph B
of the further answer and defense the following:

"7. In violation of G.S. 20-155 he entered an intersection and failed
to yield the right of way to defendant's vehicle which had approached
and entered the intersection from the plaintiff's right-hand side.

"8. In violation of G.S. 20-155, he approached and endeavored to
enter an intersection and failed to yield the right of way to defendant's
vehicle which had already entered said intersection prior to the time
plaintiff reached same."

The record discloses that it is uncontroverted that the collision in-
volved in this action occurred about 2:15 p.m. on 21 May, 1952, "a
clear, hot day," at the intersection of the unnamed road leading from
Bennett, North Carolina, by way of the new bridge over Deep River, to
Robbins, North Carolina, known as the Bennett-Robbins Road, and
the Howard's Mill Road, at a point north of the new Deep River bridge;
that in the vicinity of the point of collision the Bennett-Robbins Road
runs in general direction from north to south to southwest to and over
said bridge; and that the Howard's Mill Road dead-ends near the
Howard's Roller Mill and runs in general direction from northwest to
southeast, to and connecting with the Bennett-Robbins Road thereby
and therewith forming a "T"-shaped intersection north of the said new
bridge.

The Chevrolet automobile in which plaintiff was riding and which
was owned and operated by her husband, Lester Brady, was traveling
in a southerly direction from Bennett toward Robbins on the Bennett-
Robbins Road, which appellee describes in her brief as "a public paved
road." And the truck of defendant Nehi Beverage Company was mov-
ing in an easterly direction from Howard's Mill on the Howard's Mill
Road, which appellee describes in her brief as a "public dirt road," to
and across the Bennett-Robbins Road, turning left or north. And
there is no evidence that either of these public roads had been desig-
nated a "main traveled or through highway." G.S. 20-158 (a).

The Bennett-Robbins Road was paved to a width of eighteen feet
with shoulders about two and a half feet wide. From a point about
300 or 400 feet north of the intersection, the Bennett-Robbins Road

begins to curve to the right downgrade to the intersection, and levels out down about the new bridge. Along this section of the Bennett-Robbins Road to the right of one traveling south, as plaintiff and her husband were doing, there was an embankment eight to ten feet above the side ditch.

Upon the trial in Superior Court plaintiff in respect to the collision testified: "On May 21, 1952, . . . I was working at Robbins Cloth Mill . . . I had been working there about two years. Off and on, I had worked there about eight years . . . On May 21, 1952, I was traveling on the paved unnumbered road from Bennett to Robbins with my husband . . . We were alone in the car, and I was sitting on the right front seat. I had been over that road every day since I have been working at Robbins. We were just riding along and we came to Howard's Mill, and all at once from behind a high embankment a big truck started to run in the road in front of us, and my husband started blowing his horn and sliding the wheels, and the truck acted like it didn't hear the horn, just kept coming in the road in front of us, and we couldn't possibly miss him unless we'd 'riz' and flew and we just run into him. . . . When I first saw the truck it was just fixing to come out on the highway, and in my opinion it was moving at five or ten miles per hour at that time. It did not stop before it entered. We hit the back wheels of the truck on its left side. My husband was driving on his right-hand side. A part of the body of the truck was across his right-hand lane at the time of the collision. When the vehicles came together it knocked me out, so that is the last I remember until I come to in the hospital."

Then on cross-examination, plaintiff testified: ". . . The road we were on curves about 300 feet back up the highway, but you can see 300 feet before you get to the road that turns down to Howard's Mill. My husband was driving about 40 miles per hour as we came around the curve and approached the bridge across the river which was just a few feet beyond the Howard's Mill road. My husband had not been going any faster than 40 miles an hour back up the road . . . We were 60 or 65 feet from the truck when it came out into the highway in front of us . . . But I would say we were about 60 or 65 feet away when the truck came into the intersection and at that time my husband was driving at 40 miles an hour and the truck was going between 5 and 10, real slow like . . . but the truck just came on across the road right in front of us and we slid into him. The truck came from our right side and was going across to the left side . . . it was our car that hit the wheels of the truck. At that intersection there was a service station and garage on the left side of the road and an embankment . . . on the right side . . . And up the road to the right is the Howard Mill, which

was the road that the truck came out of. Back up the road from the direction in which we had come a few hundred feet there was another intersection where another road came into the road that we were on and we had just passed that point. My husband and I travel over this road every day."

Then on re-direct examination, plaintiff continued: "You can see down the highway about 300 feet at this point, but you can't see off the side of the highway for much distance on account of the bank on the right side. The truck came from behind the high bank . . ."

Then on re-cross-examination: "The truck that we hit was not coming at us, but was going across the road in front of us. It did not stop at any time . . ."

Plaintiff's husband, Lester Brady, as witness for her, testified in respect to the collision: ". . . We were going toward Robbins, passed Howard's Mill, and we were coming into the Deep River Bridge. I could see the bridge for about 300 feet before I got there. . . . Looking to my right coming down the hill, I could not see anything behind the bank. At that time I was driving about 35 or 40 miles per hour. The first thing I saw with respect to the truck was . . . the front portion of the truck, the bumper and grill was entering the edge of the road. I hit the car horn and my brakes at the same time. I'd say we were about 60 feet away at that time. We couldn't see the truck at all until he got near the edge of the road . . . . I was driving . . . on my right side of the road . . . If the truck stopped before entering the road, I didn't see him stop. He was moving when I first saw him. The truck kept moving from the time I saw him until I hit him and it seemed to be going straight across the road. This truck was a long drink distributing truck used for delivering drinks. It was probably 35 or 40 feet long, and six or seven feet high. My automobile came into contact with the left back wheels of the truck. It had dual wheels and we struck somewhere in the area of the rubber part of the tires . . . At the time of the actual impact, I would say maybe I was going 5 to 10 miles per hour and I had come down considerably from the 40 miles an hour we were running before. From the time I saw the truck until the contact, I did not have room to stop, and I slid into the truck. . . . The service station was on my left and the bank was on my right and I couldn't go either way. I had only one choice and that was straight down the line into the truck. The truck filled up completely across the road."

Then on cross-examination by attorney for original defendant, the witness continued: "I had been working at Robbins Mill for about two years before the accident. Going to and from my work I passed the scene of this collision twice a day and I was familiar with the road and

the surrounding area . . . When I first saw the truck, the front of it was not on the highway, but was at the edge of the road I was traveling on and at that time I was going at 35 or 40 miles per hour. There is no curve along the road where the collision occurred. . . . My tires skidded on the pavement, but I do not know how long the skid marks were . . . Referring to the map, I do not know exactly where the truck was with respect to the middle of the road shown as going to Howard's Mill. I can guess at where the wreck happened and where the truck came from and I will put a mark on the map· at the 't,' but that's guesswork. (This mark appears on map about midway the intersection—shown to be 74 feet.) . . . I don't remember if, when I hit the truck, that the front of the truck had crossed the highway. I don't know how far the truck had got across the road and I don't know whether he was sitting straight or at an angle."

Then on cross-examination by attorney for additional defendant Brady, the witness testified: ". . . From the time I first saw the truck and applied my brakes it was about two or three seconds before we hit the truck. There was no room to pass the truck on my right-hand side."

Then on re-direct examination the witness concluded his testimony by saying, "I was traveling down grade and the truck came out from behind the high bank on the right-hand side."

Ted Howard, as witness for plaintiff, testified in respect to collision in pertinent part: "On May. 21, 1952 . . . I was living at Howard's Mill . . . I did not see the collision, but I heard it and I went out to the scene right after it. My place of business is on the left side of the road about 30 feet from the point of the collision . . . on the opposite side of the road from Howard's. Mill. When I came out to the scene, the truck was headed across the highway from the mill towards my place of business. The Chevrolet automobile was about middleways of the road. There were tire marks leading up to the Chevrolet automobile and they were on the right side of the road going toward Robbins. The tire marks went right on up to the point of the impact." And the witness continued: "There was broken glass on the highway . . . kindly in the middle of the road. There was a hole knocked out right in the center of the road about 3 or 4 inches square and two inches deep. It was about at the center of the road, but a little on the right side going towards Robbins and the glass and dirt was in the highway—some on the right side . . . and on across the highway where the truck was. The truck was hit right close to the rear wheel on the left side. When the car hit the truck, the back end of the truck was knocked down a little bit. I didn't look at the injury to the Chevrolet car, but it was injured at the front end, and looked like it was torn up pretty bad . . .

When I saw it it was straight going into the road and was on the right-hand side of the road."

Then on cross-examination by attorney for original defendant, the witness testified: ". . . The road that comes out from Howard's Mill and enters the Bennett-Robbins Road fans out both ways and that's at the point where the collision occurred. At that place, where it comes into the Bennett-Robbins Road, it is a very wide road. Although there is a bank on the right-hand side of the Bennett-Robbins Road, you could see up the road towards Howard's Mill for a little piece. The bank curves around the corner and it is not a sharp corner. Before a car coming from Bennett actually reaches the intersection with the Howard's Mill Road, they can see up toward the mill a little distance . . . I . . . saw skid marks leading to the Chevrolet automobile. We measured them and they were about 30 to 40 feet. We measured on the ground. The skid marks started north of the point of impact and went 30 or 40 feet down into where the vehicles collided . . . the truck was sitting on the highway at an angle to the Bennett-Robbins Road. The car and the truck were locked together. The front end of the truck was kind of on the side of the highway toward my store. It wasn't quite all the way off the paved surface. There was a center line in this road and the skid marks of the automobile were on the right-hand side. The left skid mark was right on the center mark of the highway and that was right where the left wheel was when the vehicles hit. The left rear wheel of the truck was about on the center line of the road when the vehicles collided."

Then, on re-direct examination, the witness stated: ". . . I heard the horn blowing the first thing I heard, then I heard the tires squeal, and then I heard them come together."

Then R. N. Harris, another witness for plaintiff, testified in pertinent part: "I am a former North Carolina Highway patrolman and investigated this accident. I got there about 3:30 p.m., and the vehicles had not been moved, and were in the same place. The 1949 Chevrolet coupe was headed south on the county road, coming in the direction of Robbins from Bennett. The truck was at a 45-degree angle across the highway on the left-hand side headed south. The Chevrolet car was directly on the right-hand side headed south with the left front wheel approximately six inches from the center line . . . the bank is high all the way down until you get to the Howard's Mill Road. . . . After you get out into that road from coming out from behind the bank, a man coming out there could look up the road and could see approximately 25 or 30 feet. The front wheels would almost have to be on the hard surface before you could see it. When I got there the truck was across

the highway on the left-hand side. This was what I call open highway. . . . To my knowledge there was no caution or slow signs or anything like that, but I think there is a sign designating the bridge ahead back up the road."

Then on cross-examination the witness continued: ". . . I measured the skid marks which were on the right-hand side of the road and which led up to the Chevrolet automobile and found that they extended 60 feet north from the Chevrolet. I stepped them off and they were 20 steps long. The skid marks were lighter right at first and then grew heavier as they neared the point of collision . . . It is 5 or 10 feet more from the left rear wheel to the front of the truck than it is from the left rear wheel to the rear of the truck."

Then on re-cross-examination by attorney for additional defendant: "The bed of the truck extended approximately 4 feet beyond the rear wheels."

Plaintiff introduces the following from answer of original defendant: "As the defendant's truck approached said highway and the driver thereof brought the same almost to a complete stop, and was not operating the same at a rate of speed of over 5 or 10 miles per hour."

And plaintiff, recalled by defendant Brady for re-cross-examination, testified: "When I first saw the truck, it was just at the edge of the road and had not started up onto the pavement. From the time I saw it until the time of the crash, about a second elapsed."

At this stage of the trial plaintiff rested her case. Defendant Nehi Beverage Company moved for judgment as of nonsuit. Motion was overruled, and this defendant excepted. Exception No. 3.

Thereupon defendant Nehi Beverage Company offered evidence. First, the witness Dexter Hough testified, on cross-examination, that: "The road to Howard's Mill . . . is about 72 feet wide where it comes into the highway. We cut off the corner there . . . The original road came around the corner there. A car coming out of Howard's Mill Road could get into the Bennett-Robbins Road at any place along the 74-foot width where it intersects with the Bennett-Robbins Road."

Then defendant, Nehi Beverage Company, introduced as witness Ray Harwood who testified: ". . . I was the driver of the truck when it had the collision near Howard's Mill. I had been down to Howard's Mill to deliver some soft drinks, and when I left I was headed toward Bennett . . . I was going to come out from Howard's Mill Road and turn left on Bennett-Robbins Road. The collision happened at the intersection of the Bennett-Robbins Road and Howard's Mill Road. As I approached the intersection . . . there is a big bank to my left which obstructs the vision up the Bennett-Robbins Road for a certain dis-

tance.   As I came up to the intersection, I looked to my right and I looked to my left and there wasn't a thing there, so I looked back to my right and entered the highway and after I entered the highway a few feet . . . I saw Mr. Brady's car . . . approximately 60 to 100 feet to the north of me, which was to my left.   When I first looked to my left, as I approached the Bennett-Robbins Road, I was 4 to 10 feet from the pavement and I was going at about 5 to 10 miles an hour . . . driving in low gear . . . When I looked up to the left, I could see 100 or 150 feet and there wasn't a thing there when I looked . . . I could see a quarter of a mile to my right.   When I first saw Mr. Brady 60 to 100 feet up the road to my left, I realized that if I had stopped we would have had the collision, so I just kept going and was turning to my left when the vehicles collided.   The automobile hit the left rear wheel of my truck with the left front of the automobile.   My left rear wheel was just about in the center of the Bennett-Robbins. Road when the collision happened . . . I saw tire marks on the pavement . . . approximately 60 feet long, leading . . . to the rear of his car . . . At the time I first heard the horn and the brakes and saw Mr. Brady's car . . . I was in the highway and had already entered the intersection.   I don't know how far . . . but I was in the intersection."

Then on cross-examination: ". . . When I came back to the intersection, I went on into the road without stopping . . . I knew that automobiles went to and fro over the bridge.   When I came up to the intersection, I looked to the right and then to the left and then back to the right and drove out into the intersection without looking back to the left again and I was going to make a left-hand turn into the Bennett-Robbins Road.   I did not stop before entering the intersection . . . I didn't stop because Mr. Brady would still have run into me, if I had stopped.   When I heard the horn blow I kept on going . . . I was already on the road when I heard the horn blowing and brakes squeal . . . When I stopped . . . the rear wheels of the truck were sitting just about the center line of the pavement.   The truck is approximately 22 feet long . . . I was going to make a left turn . . . and I didn't give any signal . . ."

And B. W. Paschal, as witness for defendant, testified: ". . . I am a surveyor, and I made the map which is being exhibited.   I made it from my personal measurements at the scene of this intersection.   The Bennett-Robbins highway is 18 feet wide.   The Howard's Mill Road intersects with the Bennett-Robbins Road and it flares out and fans out to about 74 feet wide and is 74 feet wide at the point the two roads intersect."

Defendant Nehi Beverage Company introduced in evidence the map prepared by B. W. Paschal, its Exhibit No. 1.   And thereupon this

defendant rested its case—and at the close of all the evidence renewed its motion for judgment as of nonsuit. Motion overruled. Defendant Nehi Beverage Company excepted. Exception No. 4.

The case was submitted to the jury upon the issues shown in the record on this appeal, and from judgment on adverse verdict defendant Nehi Beverage Company, Inc., excepted to the signing and entering of judgment, for errors assigned and to be assigned, and appeals to Supreme Court.

*Seawell & Wilson and Boyette & Brogden for plaintiff, appellee.*

*W. D. Sabiston, Jr., and Ruark, Young & Moore for defendant Nehi Beverage Company, appellant.*

*Gavin, Jackson & Gavin for additional defendant Brady, appellee.*

WINBORNE, J. While appellant brings forward many assignments of error, those numbered 3 and 4 based upon exceptions of like numbers, to the overruling of motion of appealing defendant, entered when plaintiff first rested her case and renewed at the close of all the evidence, for judgment as of nonsuit under the provisions of G.S. 1-183, present the determinative question. The exceptions are well taken.

The defendant appellant contends, as two of the grounds for judgment as of nonsuit, and we hold rightly so, that the record and case on appeal show: I. That there is a material variance between the allegations of plaintiff's complaint, and the proof offered upon the trial. II. That there is no evidence of actionable negligence against defendant, the appellant.

I. In the first place there is a fatal variance between the allegation and the proof.

Turning to the complaint of plaintiff, and the amendment thereto, it is apparent that the theory on which she based her case is that the paved road on which the automobile in which she was riding was traveling was the dominant highway, and that the dirt road on, and out of which defendant's truck came into the intersection of the two roads, was the subservient road. In the order entered at pre-trial hearing she contended "that the operator of said truck entered said highway from a blind side of the road, within 60 feet from the automobile in which plaintiff was riding, without observing or looking or heeding the warning horn of the automobile in violation of G.S. 20-158." And in the amendment to her complaint it is alleged: "2. That defendant's agent . . . was negligent in that (a) He entered a public highway from a private road or drive and failed to yield the right of way to all vehicles approaching on such public highway, including the automobile in which plaintiff was riding,

in violation of G.S. 20-156"; and "(b) He failed to stop at the public highway upon which the automobile in which plaintiff was riding was traveling and proceeding in violation of G.S. 20-158."

In this connection G.S. 20-156 provides in pertinent part that "(a) The driver of a vehicle entering a public highway from a private road or drive shall yield the right of way to all vehicles approaching on such public highway."

And G.S. 20-158 provides in pertinent part that "(a) The State Highway and Public Works Commission, with reference to State highways . . . are (is) hereby authorized to designate main traveled or through highways by erecting at the entrance thereto from intersecting highways signs notifying drivers to come to full stop before entering or crossing such designated highway, and whenever any such signs have been so erected it shall be unlawful for the driver of any vehicle to fail to stop in obedience thereto . . ."

But the evidence offered upon the trial, instead of supporting the theory of the complaint, and the amendment thereto, clearly shows that the two roads here involved were public roads of equal dignity, neither having been designated by the State Highway and Public Works Commission as "main traveled or through highway" as defined in G.S. 20-158 (a).

Therefore, there is a material variance between the allegation and the proof. Plaintiff must make out her case according to her allegations, that is, *secundum allegata*. The court cannot take notice of any proof unless there be a corresponding allegation. And where there is a material variance between the allegation and the proof, such defect may be taken advantage of by motion for judgment as of nonsuit. *Whichard v. Lipe,* 221 N.C. 53, 19 S.E. 2d 14; *Wilkins v. Finance Co.,* 237 N.C. 396, 75 S.E. 2d 118; *Lyda v. Marion,* 239 N.C. 265, 79 S.E. 2d 726; *Andrews v. Bruton, post,* 93, and numerous other cases cited therein, and annotated thereon.

II. In considering motion for nonsuit, "the defendant's evidence, unless favorable to the plaintiff, is not to be taken into consideration, except when not in conflict with plaintiff's evidence, it may be used to explain or make clear that which has been offered by plaintiff," *Stacy, C. J.,* in *Harrison v. R. R.,* 194 N.C. 656, 140 S.E. 598, citing *S. v. Fulcher,* 184 N.C. 663, 113 S.E. 769. See *Rice v. Lumberton,* 235 N.C. 227, 69 S.E. 2d 543, and cases there cited. See also *Williams v. Robertson,* 235 N.C. 478, 70 S.E. 2d 692; *Ward v. Cruse,* 236 N.C. 400, 72 S.E. 2d 835; *Harris Express v. Jones,* 236 N.C. 542, 73 S.E. 2d 301; *Nance v. Hitch,* 238 N.C. 1, 76 S.E. 2d 461; *Hawkins v. McCain,* 239 N.C. 160, 79 S.E. 2d 493.

Therefore, taking the evidence offered by the plaintiff, and so much of defendant's evidence as is favorable to plaintiff, or tends to explain and make clear that which has been offered by the plaintiff, as shown in the case on appeal, in the light most favorable to plaintiff, and giving to plaintiff the benefit of every reasonable inference to be drawn therefrom, as the law directs in considering a motion for judgment as of nonsuit, G.S. 1-183, *Nance v. Hitch, supra,* this Court is of opinion, and holds, that in the light of the pleadings, there is not sufficient evidence to take the case to the jury on the issue of negligence of defendant, Nehi Beverage Company, as alleged in the complaint as amended.

All the evidence further shows that the truck of defendant came to, and entered the intersection before the automobile in which plaintiff was riding reached the intersection, and that the truck approached the intersection from the automobile's right side of the road. Under such factual situation the truck of defendant had the right of way. G.S. 20-155 provides: "(a) When two vehicles approach or enter an intersection and/or junction at approximately the same time, the driver of the vehicle on the left shall yield the right of way to the vehicle on the right except as is otherwise provided in G.S. 20-156." The exception relates to entering from a "private road or drive" as above set forth.

(Take notice in passing that the use of term "and/or" in the statute is not approved. See *Gibson v. Ins. Co.,* 232 N.C. 712, 62 S.E. 2d 320.)

The term "right of way" as applied to vehicular travel at intersections of highways and streets, means "the right of a vehicle to proceed uninterruptedly in a lawful manner in the direction in which it is moving in preference to another vehicle approaching from a different direction into its path." 60 C.J.S., Motor Vehicles, Section 362—quoted by *Ervin, J.,* and applied in *S. v. Hill,* 233 N.C. 61, 62 S.E. 2d 532.

In the *Hill case* the Court declares these relevant rules:

"1. 'When two vehicles approach or enter an intersection . . . at approximately the same time,' the driver on the right has the right of way, and the driver on the left must yield him that right. G.S. 20-155 (a).

"2. This statutory rule does not apply, however, unless the two vehicles approach or enter the intersection at approximately the same time. When that condition does not exist, the vehicle first reaching and entering the intersection has the right of way over a vehicle subsequently reaching it, irrespective of their directions of travel; and it is the duty of the driver of the latter vehicle to delay his progress so as to allow the first arrival to pass in safety. (citing cases)

"3. Two motor vehicles approach or enter an intersection at approximately the same time within the purview of these rules whenever their respective distances from the intersection, their relative speeds, and the

other attendant circumstances show that the driver of the vehicle on the left should reasonably apprehend that there is danger of collision unless he delays his progress until the vehicle on the right has passed. (citing cases) A corollary of this proposition may be stated conversely in these words: When the driver of a motor vehicle on the left comes to an intersection and finds no one approaching it on the other street within such distance as reasonably to indicate danger of collision, he is under no obligation to stop or wait, but may proceed to use such intersection as a matter of right. . . .

"4. A driver having the right of way may act upon the assumption in the absence of notice to the contrary that the other motorist will recognize his right of way and grant him a free passage over the intersection."

In the light of these rules the driver of defendant's truck had the right of way, that is, the right to proceed uninterruptedly in a lawful manner. He was not required to stop. And the evidence is uncontradicted that he entered the intersection operating the truck at a speed of five or ten miles per hour—"real slow like," in the language of plaintiff. And he had the right to assume, and to act on the assumption, in the absence of notice to the contrary, that the operator of the automobile in which plaintiff was riding would recognize his right of way and grant him a free passage over the intersection. *S. v. Hill, supra.* In entering the intersection in the way and manner disclosed by the evidence the driver of the truck was proceeding within the law.

For reasons stated the judgment below as it relates to appealing defendant is

Reversed.

BARNHILL, C. J., and DEVIN, J., took no part in the consideration or decision of this case.